UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LINDA BERNING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.  1:06-CV-00087 |
| ) | |
| UAW LOCAL 2209, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the Court is a Motion for Protective Order Precluding Deposition of UAW President Ron Gettelfinger (Docket # 41) filed by Defendant UAW International Union ("UAW").  The UAW requests that the Court quash a subpoena issued by *pro se* Plaintiff Linda Berning for the deposition of UAW President Ron Gettelfinger and that the Court enter a protective order precluding his deposition in this matter.  For the reasons stated herein, UAW's motion will be GRANTED.

*A.  Factual and Procedural Background*

On March 20, 2006, Berning commenced this suit against Defendants General Motors Corporation ("GM"), UAW Local 2209 ("Local 2209"), and UAW, alleging a breach of the collective bargaining agreement ("CBA") by GM and a breach of the duty of fair representation by Local 2209 and UAW.[1]  On April 24, 2006, Berning filed a second action (the "Local 2209 Suit") against Local 2209 and several of its officers, *see Berning v. Local 2209 UAW*, No. 1:06-cv-170 (N.D. Ind. filed April 24, 2006), and on October 19, 2006, Berning filed yet another

---

[1] Berning seeks $3,000,000 in damages in this suit, though she remains employed by GM and has not alleged any loss of work due to the alleged violations. (Compl. at 3.)

action (the "GM Suit") against General Motors, *see Berning v. Gen. Motors*, No. 1:06-cv-347 (N.D. Ind. filed October 19, 2006).

The Court conducted a scheduling conference in this suit on June 1, 2006, whereby a discovery deadline of December 29, 2006, and a dispositive motion deadline of January 31, 2007, were established. (Docket # 28.)  On December 15, 2006, the Court extended the discovery deadline to April 18, 2007, and the dispositive motion deadline to May 18, 2007, and granted Berning's motion to consolidate this action with the GM Suit. (Docket # 38, 39.)

To date, though she did make one request for the production of documents in the GM Suit before the two cases were consolidated, the only discovery that Berning has served to UAW in this suit is the subpoena to depose Gettelfinger.  Berning did, however, depose the following individuals in connection with the Local 2209 Suit: Rich LeTourneau, UAW servicing representative for GM's Fort Wayne facility; David Curson, administrative assistant to Gettelfinger; James Zent, President of Local 2209; Carol Schultz, Recording Secretary of Local 2209; and Darlene Walker, office secretary for Local 2209. (UAW's Br. in Supp. of Mot. for Protective Order at 2.)

## *B.  Analysis*

Though Berning summarily states that she wants to depose Gettelfinger about "many issues," the only issue that she identifies with any particularity is her desire to ask Gettelfinger about "who supposedly made the decisions on [her] charges against the executive board and [her] request for peer group review."[2] (Pl.'s Resp. Br. at 3.)  In response, UAW requests that the

---

[2] In fact, Berning further demonstrates her vagueness as to the material she hopes to obtain from Gettelfinger by stating: "[UAW's counsel] has *no idea* of what questions I would ask Mr. Gettelfinger concerning this law suit." (Pl.'s Resp. Br. ¶ 8 (emphasis added).)

2

Court enter a protective order precluding Berning from taking the deposition, asserting that the discovery sought from Gettelfinger is obtainable from other sources that are more convenient, less burdensome, or less expensive; that the burden and expense of the deposition outweighs its likely benefit given that Gettelfinger has no special or unique knowledge, the information sought is of marginal relevance to the case, and the amount in controversy is relatively small; and that there is a significant risk that Gettelfinger would be subjected to unwarranted annoyance, harassment, and abuse in a deposition by Berning. (UAW's Mot. for Protective Order at 1-2.)

Federal Rule of Civil Procedure 26(c) provides that a court, upon motion by a party or person from whom discovery is sought, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had . . . ." Rule 26(b)(2)(C) grants additional discretion to the court to limit discovery in the event that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues.

The Seventh Circuit Court of Appeals has confirmed that "[d]istrict courts have broad discretion in matters relating to discovery." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). It has cautioned, however, that "[b]efore restricting discovery, the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Id*. (internal quotation marks and

3

citation omitted).

In *Patterson*, the Seventh Circuit Court of Appeals upheld the district court's refusal to allow a plaintiff in a Title VII employment discrimination case to take the deposition of the defendant's corporate vice president, who had sent an e-mail to the human resources director concerning the plaintiff's termination. *Id*. at 681-82.  The Court of Appeals noted that the deponent was a high ranking officer in a multinational corporation; that the deposition would have been costly and burdensome as the deponent worked more than 1,000 miles away from where the plaintiff was employed; that the plaintiff had taken depositions from two supervisors and the human resources director of the company; and that the plaintiff had failed to submit interrogatories, that is, an inexpensive, convenient, less-burdensome method of discovery. *Id*. The Court of Appeals concluded that the plaintiff's failure to take advantage of this less expensive, convenient method of discovery "casts serious doubt over her claim that [the deponent] possessed information that was more than marginally relevant to [the plaintiff's] civil action." *Id*.  The Court then precluded the deposition. *Id*.

Here, in support of its request to preclude Gettelfinger's deposition, UAW first explains that Gettelfinger simply has no personal or unique knowledge as to any matter involving Berning. (UAW's Br. in Supp. of Mot. for Protective Order at 10-12; Decl. of Ron Gettelfinger ¶ 12); *see Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 482-84 (10th Cir. 1995) (entering protective order precluding deposition of IBM Board Chairperson who authorized the discharge plan in an age discrimination action but had no personal knowledge of the matter concerning plaintiff); *Lewelling v. Farmers Ins. of Columbus, Inc*., 879 F.2d 212, 218 (6th Cir. 1989) (precluding deposition of defendant's chief executive officer who lacked knowledge about any

4

pertinent facts); *Cardena v. Prudential Ins. Co. of Am.*, Nos. Civ. 99-1421 (JRT/FLN), Civ. 99-1422 (JRT/FLN), Civ. 99-1736 (JRT/FLN), 2003 WL 21293757, at *1-2 (D. Minn. May 16, 2003) (quashing subpoena to depose Prudential executives where plaintiff failed to establish that the executives had "unique" knowledge that could not be obtained from lower ranking employees); *but see Consolidated Rail Corp. v. Primary Indus. Corp.*, Nos. 92 Civ. 4927 (PNL), 92 Civ. 6313 (PNL), 1993 WL 364471, at *1 (S.D.N.Y. Sep. 10, 1993) ("[A] claim that the witness lacks knowledge is subject to testing by the examining party.).  Gettelfinger states that while his office is indeed responsible for investigating and processing appeals to the seventeen-member International Executive Board ("IEB") of which he is a member, his five staff persons handle the day-to-day responsibilities for the investigations. (Gettelfinger Decl. ¶¶ 5-7.) Gettelfinger explains: "Unless an appeal is unique or remarkable in some manner, [the review of appeals], in the great majority of cases, is performed by members of the staff in my office," who then circulate a report to the IEB for review and decision. (*Id*.)

As to Berning's specific appeal, Gettelfinger explains: "The IEB decision in [Berning's] case was drafted by staff member Don Sarkesian and, to the best of my knowledge, I did not personally review any of the underlying submissions or records in connection with the case." (*Id*. ¶ 8.)  Gettelfinger further reports: "Any correspondence that I may have signed in response to [Berning's] submissions was drafted by a staff member, and I did not inquire into the substance of the matters being addressed." (*Id*. ¶ 10.)  Thus, Gettelfinger concludes: "I have absolutely no knowledge of [Berning's] grievances or any of the details surrounding the processing of her grievances." (*Id*. ¶ 12.)

Next, not only does UAW claim that Gettelfinger has no personal knowledge about

Berning's matter, but it also contends that Gettelfinger's participating in a deposition by Berning would be unduly burdensome and oppressive to him. (UAW's Br. in Supp. of Mot. for Protective Order at 13-16); *see Consolidated Rail Corp.*, 1993 WL 364471, at *1 ("[P]ermitting unfettered discovery of corporate executives would threaten disruption of their business and could serve as a potent tool for harassment in litigation."); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) ("[Lee Iacocca] is a singularly unique and important individual who can be easily subjected to unwarranted harassment and abuse. He has a right to be protected, and the courts have a duty to recognize his vulnerability."); *but see CBS, Inc. v. Ahern*, 102 F.R.D. 820, 822 (S.D.N.Y. 1984) ("[T]he fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery."). As the international president of the UAW, an organization representing 1.3 million members, Gettelfinger oversees more than six hundred full-time UAW staff members who bargain contracts, handle grievances, and conduct business with nearly one thousand different employers in a variety of industries across the United States, Canada, and Puerto Rico. (Gettelfinger Decl. ¶¶ 1-3.) Gettelfinger states that presently he is heavily involved in the UAW's relationship with the "Big Three" domestic automobile manufacturers and their efforts to restructure various activities on an urgent basis to address their financial difficulties. (*Id*. ¶ 4.) For example, in March he chaired the National Bargaining Convention, which brought thousands of local union leaders and elected delegates to Detroit, and this summer he will lead National Bargaining. (*Id*.)

     Finally, UAW emphasizes that Berning has failed to pursue the desired information through less burdensome means. (UAW's Br. in Supp. of Mot. for Protective Order at 12-13.) To elaborate, Berning has submitted no interrogatories to UAW and no production requests in

this action, other than the single production request made in the GM Suit prior to its consolidation with the instant action. Berning's "failure to take advantage of this inexpensive, convenient method of discovery, *i.e.*, interrogatories, casts serious doubts over her claim that [Gettelfinger] possess[es] information that [is] more than marginally relevant to her civil action." *Patterson*, 281 F.3d at 682. In that same vein, UAW offered for deposition three of Gettelfinger's staff members as persons who have superior knowledge of the matters relating to Berning that were handled by his office; however, Berning has only chosen to depose one of those assistants. (UAW's Br. in Supp. of Mot. for Protective Order at 12); *see Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 270 (7th Cir. 1994) (precluding plaintiff from deposing a third employee whose knowledge was limited to corporate documents when plaintiff failed to depose the two employees who had personal knowledge of relevant matters); *Consolidated Rail Corp.*, 1993 WL 364471, at *1 ("[W]here other witnesses have the same knowledge, it may be appropriate to preclude a redundant deposition of a highly-placed executive."); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 98 (S.D. Iowa 1992) (requiring defendant to depose those employees who plaintiff asserted had more personal knowledge of the relevant matters before allowing defendant to depose the plaintiff's president).

   Viewing Berning's request under the totality of circumstances, *see Patterson*, 281 F.3d at 681-82, it is clear that a protective order precluding the deposition of Gettelfinger is warranted. First, the Court cannot accurately assess the value of the information Berning seeks since she remains rather evasive about exactly what information she hopes to gain through deposing Gettelfinger. Second, the actual amount in controversy may well be less than the $3,000,000 Berning claims in damages, as she remains currently employed by GM and has not alleged any

7

loss of work due to Defendants' alleged actions.  Third, and most significantly, Berning has not attempted to obtain the desired information through less burdensome means, such as interrogatories, and has only chosen to depose one of the three administrative assistants that UAW offered for deposition. *Id.*; *Rolscreen Co.*, 145 F.R.D. at 98.  Finally, Gettelfinger, in his position as the President of the International UAW, is particularly vulnerable to unwarranted harassment and abuse that Berning's deposition may produce, and he has a right to be protected from such harassment. *Id.*; *Mulvey*, 106 F.R.D. at 366.

Therefore, in light of the burden that a deposition would place on UAW and considering Berning's refusal to first avail herself of other reasonably available means of discovery, the Court will grant UAW's request for a protective order precluding Gettelfinger's deposition. *Patterson*, 281 F.3d at 682; *see generally Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) ("District courts have broad discretion in discovery matters . . . .").

### *C.  Conclusion*

For the reasons set forth herein, Defendant UAW's Motion for Protective Order Precluding Deposition of UAW President Ron Gettelfinger (Docket # 41) is hereby GRANTED in that Berning's subpoena for the deposition of Gettelfinger is QUASHED and Berning is precluded from deposing Gettelfinger in the instant action.

SO ORDERED.

Enter for this 9th day of April, 2007.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

8